**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE MISHEWAL WAPPO TRIBE OF ALEXANDER VALLEY, | CASE NO. 5:09-cv-02502 EJD |
| Plaintiff(s), | **ORDER DENYING INTERVENORS' MOTION TO DISMISS** |
| v. | |
| KEN SALAZAR, et. al, | [Docket Item No(s). 135, 145] |
| Defendant(s). | |

Presently before the Court is the motion of Intervenors County of Sonoma and County of Napa (the "Counties"), who jointly seek dismissal of this action filed by Plaintiff Mishewal Wappo Tribe of Alexander Valley (the "Tribe"). Both the Tribe and the Federal Defendants (the "Government") oppose the motion. According to the FAC, this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361. See FAC at ¶¶ 2, 3. For the reasons discussed below, the motion will be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On June 5, 2009, the Tribe filed a complaint against the Secretary and Assistant Secretary of the Interior seeking federal recognition and the protection, services and benefits which stem from such recognition. See Complaint, Docket Item No. 1. In addition, the Tribe seeks an order directing the Secretary to take into trust public lands currently held by the Department of the Interior for the benefit of the Tribe. See id. A First Amended Complaint ("FAC") was thereafter filed on May 10,

1
CASE NO. 5:09-cv-02502 EJD
ORDER DENYING INTERVENORS' MOTION TO DISMISS

1  2010. See FAC, Docket Item No. 49.

2  Pursuant to the allegations in the FAC, the Tribe's members are the descendants or successors in interest of the historic membership of Mishewal Wappo tribe, a group the federal government began to officially recognize as an Indian tribe in 1851 and for whose benefit the government held 54 acres of land in Sonoma County, commonly known as a rancheria. See id., at ¶¶ 5, 9, 10. The historic tribe was eventually terminated, along with 41 others, pursuant to the California Rancheria Act (the "Act"), which authorized the Secretary of the Interior to terminate certain rancherias in exchange for the installation of infrastructure and free title to rancheria assets. See id., at ¶¶ 12, 13. Many of these tribes and their respective lands were the subject of a prior class action - Hardwick v. United States - in which a number of the formerly-terminated California tribes achieved restoration. See id., at ¶ 58. The Mishewal Wappo, although originally included in Hardwick, were dismissed without prejudice prior to resolution. See id., at ¶ 59.

In this companion action to Hardwick, the Tribe contends the process implemented by the Secretary was not compliant with the Act for a variety of reasons, and therefore did not result in an actual termination. The Tribe claims breach of fiduciary duty, violation of possessory interests, and a failure by the Secretary to comply with the Administrative Procedure Act ("APA), 5 U.S.C. § 500 et. seq. The Counties, having successfully intervened in this action on May 26, 2010, now seek to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(h)(3).

## II.  LEGAL STANDARDS

### A.  12(b)(1) and 12(h)(3)

A Rule 12(b)(1) motion challenges subject matter jurisdiction and may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. When a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Thornhill Publ'g Co. v. General Tel. Elec., 594 F.2d 730, 733 (9th Cir. 1979).

When a defendant makes a factual challenge "by presenting affidavits or other evidence

1 properly brought before the court, the party opposing the motion must furnish affidavits or other 2 evidence necessary to satisfy its burden of establishing subject-matter jurisdiction." Safe Air For 3 Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The court need not presume the 4 truthfulness of the plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 5 (9th Cir. 2000); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). However, in the 6 absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject-matter are 7 viewed in the light most favorable to the opposing party. Dreier v. United States, 106 F.3d 844, 847 8 (9th Cir. 1996). The disputed facts related to subject-matter jurisdiction should be treated in the 9 same way as one would adjudicate a motion for summary judgment. Id.

10 Similarly, Federal Rule of Civil Procedure 12(h)(3) requires dismissal "[i]f the court 11 determines at any time that it lacks subject-matter jurisdiction."

**B. 12(b)(6)**

13 Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient 14 specificity to "give the defendant fair notice of what the...claim is and the grounds upon which it 15 rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A 16 complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim 17 upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is 18 appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a 19 cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 20 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the 21 speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

22 When deciding whether to grant a motion to dismiss under 12(b)(6), the court generally 23 "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & 24 Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must accept as true all "well-pleaded 25 factual allegations." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009). The court must 26 also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 27 F.2d 1242, 1245 (9th Cir. 1988). "[M]aterial which is properly submitted as part of the complaint 28 may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal

3
CASE NO. 5:09-cv-02502 EJD
ORDER DENYING INTERVENORS' MOTION TO DISMISS

conclusion couched as a factual allegation." Id.

### III. DISCUSSION

The Counties raise several theories in support of dismissal. As the court understands it, the Counties argue under 12(b)(1) and 12(h)(3) that: (1) the Tribe lacks standing, (2) the Tribe's claims are barred by a jurisdictional statute of limitations, (3) the issues constitute a non-justiciable political question, and (4) the Tribe has failed to exhaust administrative remedies. Under 12(b)(6), the Counties argue the Tribe's claims are barred by the equitable doctrine of laches.[1] Each of these arguments are discussed below in turn.

**A. Standing**

**1. Legal Standard**

Federal court jurisdiction is limited to the adjudication of "cases" and "controversies." U.S. Const., Art. III.[2] This limitation, known as the requirement of "justiciability," manifests itself through a number of basic legal principles. One of those principles is the requirement that the plaintiff have standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). The essential question is "whether the particular plaintiff is entitled an adjudication of the particular claims asserted." Allen v. Wright, 468 U.S. 737, 752 (1984).

The modern standing doctrine contains three basic constitutional elements along with a corollary "prudential" limitation. The constitutional elements require: (1) an "injury in fact," which is neither conjectural or hypothetical, (2) causation, such that a casual connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the

---

[1] The court declines the Government's invitation to review the propriety of the Counties's interest in this case. As the docket reveals, the Government and Tribe did not oppose the Counties' motion for intervention, and the Counties were granted unqualified leave to intervene by this court's predecessor with the apparent acquiescence of all involved. See Docket Item Nos. 50, 51, 52. Thus, the Counties must be treated as if they were original named parties with the ability to raise arguments, in the same way that the Tribe and the Government may raise arguments. See Brown v. Demco, Inc., 792 F.2d 478, 480 (5th Cir. 1986); see also Northeast Clackamas County Elec. Cooperative, Inc. v. Continental Cas. Co., 221 F.2d 329, 332-33 (9th Cir. 1955).

[2] Since the existence of standing goes to the heart of jurisdiction, this issue is one which would require an independent examination by the court, even in the absence of a specific challenge by one of the parties. United States v. Hays, 515 U.S. 737, 742 (1995).

4
CASE NO. 5:09-cv-02502 EJD
ORDER DENYING INTERVENORS' MOTION TO DISMISS

injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61.

The prudential limitation "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen, 468 U.S. at 751).

The party seeking to invoke federal court jurisdiction, in this case the Tribe, has the burden of establishing the constitutional elements of standing. See Lujan, 504 U.S. at 561.

**2. Application**

According to the Counties, at issue for their factual attack is whether the Tribe can demonstrate a substantial and meaningful connection to the Indians who were allegedly harmed. See United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 548 n.2 (10th Cir. 2001). This, the court presumes, falls under the prudential limitation on standing in order to ensure the Tribe is asserting its own claims rather than those of others.

But if that is what must be shown, the evidence supplied by the Counties is insufficient to create a factual dispute as to that issue. In the FAC, the Tribe contends it "is an American Indian Tribe consisting of Indian members and their descendants, and/or their successors in interest, for whose benefit the United States acquired and created the Mishewal Wappo Tribe of Alexander Valley." See FAC, at ¶ 5. Apparently seeking to go beyond this allegation, the Counties' submitted two declarations: one from David H. Tennant, an attorney for the Counties (the "Tennant Declaration"), and one from Stephen Dow Beckham, Ph.D., an expert in the area of various Indian law matters (the "Beckham Declaration").[3] The Tennant Declaration and its attached exhibits merely establish that the Tribe is of modern creation. But the Tribe's allegation that it is consists of "descendants" and "successors in interest" shows this fact is not in dispute. More substantial is the Beckham Declaration. But even that is not sufficient to create the dispute the Counties allege. In

---

[3] Notably, the Beckham Declaration indicates in paragraph one that it is the declaration of another individual, namely Dr. Robert B. Pamplin. The court assumes this was a mistake and construes the affidavit as that of Dr. Beckham.

5
CASE NO. 5:09-cv-02502 EJD
ORDER DENYING INTERVENORS' MOTION TO DISMISS

essence, Dr. Beckham concludes that (1) the historic tribe has dispersed from the Rancheria by 1959, (2) the historic membership had no formal tribal existence at the time of termination, and (3) the Tribe's membership descends from a family not included in the census of historic members. The first two conclusions are again undisputed by the allegations in the FAC, and say nothing of the Tribe's current connection to the historic members. Simply because the historic tribe had dispersed and had no formal existence does not mean that no tribal identity was maintained, or that the member of the current members of the Tribe have no connection to such an identity. The third conclusion is entitled to little weight, since the Counties admit in their pleadings they have not reviewed the Tribe's current membership list.

In sum, the Court finds the Counties' evidence fails on a preliminary level to raise a factual dispute requiring resolution under 12(b)(1), and exercises its discretion not to consider it here. Sizova v. National Inst. Of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002) ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."). Furthermore, the court finds in the interests of fairness that the Tribe should be provided with an opportunity to oppose the factual underpinnings of the Counties' evidence, rather than having to respond to such a complex matter through this rather abbreviated dismissal process. See Russell v. United States, No. CV-08-8111-PCT-MHM, 2009 WL 2929426, 2009 U.S. Dist. LEXIS 82507, at *7 (D. Ariz. Sep. 10, 2009). Accordingly, the court will convert the Counties' standing challenge into one under 12(b)(6). The Tribe's allegations of standing are assumed true under that rule. See Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

In the FAC, the Tribe alleges it is "an American Indian Tribe consisting of Indian members and their descendants, and/or their Indian successors in interest." See FAC, at ¶ 5. For injury, the Tribe alleges that "[a]s a direct and proximate result of Secretary's failure to confirm membership, two-thirds of the Tribe's Rancheria was unlawfully distributed to non-members residing on the Rancheria, but not enrolled with the Tribe." See id., at ¶¶ 84, 111. In addition, the Tribe "has been and continues to be ineligible for the 'protection, services and benefits of the Federal government available to Indian tribes by virtue of their status as tribes' pursuant to 25 C.F.R. § 83.2." See id. at ¶¶ 85-86, 94-95, 99, 101, 105, 107. Redress under the APA is available in this court. Thus, the

Tribe's allegations are sufficient to meet the requisite elements. The Counties' motion to dismiss will be denied as to standing.

### B. Statute of Limitations

The Counties contend the Tribe's claims are time-barred. Applicable here is 28 U.S.C. § 2401(a), which states, in pertinent part:

> [E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.[4]

But as the Government suggests, the Counties' ability to maintain an argument based on § 2401(a) depends on whether the statute is jurisdictional or procedural. This is because § 2401(a), by its own terms, applies only to claims brought against the Government. In that regard, it is distinct from other more general limitation statutes in that it explicitly identifies the party to which it endures. It therefore follows that *only* the Government may invoke it as a defense or waive its application. See Powers v. Ohio, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interest of third parties."); see also Chailland v. Brown & Root, Inc., 45 F.3d 947, 951 n.9 (5th Cir. 1995) ("It is a well established general rule that parties may not raise defenses that are not their own."); see also United States v. Metropolitan St. Louis Sewer Dist., 952 F.2d 1040, 1043 (8th Cir. 1992).

In arguing for a jurisdictional application of § 2401 (a), the Counties rely primarily on Hopland Band of Pomo Indians v. United States, 855 F.2d 1573 (Fed. Cir. 1988). There, Plaintiff appealed a judgment of the United States Claims Court which, inter alia, dismissed the Plaintiff's complaint as barred by the 6-year statute of limitations for presentation of claims as stated in 28 U.S.C. § 2501. Plaintiff argued on appeal that the statute of limitations should be tolled due to the

---

[4] Although the Tribe argues otherwise, it is clear that all of the APA claims are subject to § 2401(a). "APA claims are subject to a six-year statute of limitations." Hells Canyon Pres. Council v. United States Forest Serv., 593 F.3d 923, 930 (9th Cir. 2010) (citing 28 U.S.C. § 2401). The Tribe's citation of two district court cases, which it mysteriously characterizes as Ninth Circuit precedent, do not support a contrary conclusion.

"apparent unfairness of allowing the government to rely on the statute of limitations when the Band's practical difficulties in organizing and bringing suit allegedly stemmed from government actions" terminating the tribe. Hopland, 855 F.2d at 1579. In other words, Plaintiff contended the claims at issue could not have been presented earlier since Plaintiff was unable to bring claims on its behalf after tribal termination and prior to restoration.

The Federal Circuit disagreed, however, but held the Claims Court should have dismissed for lack of jurisdiction. Id. at 1582. The court reasoned that since the 6-year period in § 2501 is "an express condition of the government's consent to be sued, courts are without jurisdiction to expand that period explicitly provided by Congress." Id. at 1578.

The Supreme Court has since come to a similar conclusion. In John R. Sand & Gravel Co. v. United States, 552 U.S. 130 (2008), the Court reiterated that the 6-year limitations period in § 2501 is a jurisdictional bar and not subject to equitable tolling. Sand, 552 U.S. at 136.

But the analyses of Hopland - and John R. Sand for that matter - do not neatly translate to § 2401(a) because § 2501 has been long interpreted as a jurisdictional statute. Id. at 134 ("[T]he Court has sometimes referred to the time limits in such statutes as 'jurisdictional.' This Court has long interpreted the court of claims limitations statute as setting forth this second, more absolute, kind of limitations period." (internal citations omitted)). Section 2401(a), in contrast, has no such comparable history.

Moreover, the Ninth Circuit has expressly found that § 2401(a) is not a jurisdictional bar. "Because the statute of limitations codified at 28 U.S.C. § 2401(a) makes no mention of jurisdiction but erects only a procedural bar...we hold that § 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject to waiver." Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 770 (9th Cir. 1997). Although the continued vitality of Cedars-Sinai has since been questioned in light of John R. Sands (see Aloe Vera of Am., Inc. v. United States, 580 F.3d 867, 872 (9th Cir. 2009)), it nonetheless remains the law of this circuit and has recently been applied as such. See Wilton Miwok Rancheria v. Salazar, 2010 WL 693420, 2010 U.S. Dist. LEXIS 23317, at *15 (N.D. Cal. Feb. 23, 2010) ("In the Ninth Circuit, however, Cedars-Sinai still is controlling law, and this Court finds the district court authority from within the circuit to be persuasive."); Sierra Club v. Johnson, 2009 WL

1  482248, 2009 U.S. Dist. LEXIS 14819, at *25 (N.D. Cal., Feb. 25, 2009) ("This order declines to
2  find that Sand alters the Ninth Circuit's pronouncement that Section 2401(a) is not jurisdictional.");
3  Crosby Lodge, Inc. v. Nat'l Indian Gaming Comm'n, 2008 WL 5111036, 2008 U.S. Dist. LEXIS
4  98001, at *14 (D. Nev. Dec. 3, 2008) ("[T]his court declines to read John R. Sand & Gravel Co. as
5  altering the Ninth Circuit's previous conclusion that § 2401(a) is not jurisdictional in nature.");
6  Public Citizen, Inc. v. Mukasey, 2008 WL 4532540, 2008 U.S. Dist. LEXIS 81246, at *24 (N.D.
7  Cal., Oct. 9, 2008) ("Sand involves a different statute of limitations, and the Ninth Circuit has not
8  had the occasion to address Sand's applicability, if any, to the [Federal Administrative Procedure
9  Act]. This court sees no reason to attempt to extend Sand's holding and find such application
10 now.").

11 Because this court finds persuasive the determinations of its fellow district courts, the
12 Counties' jurisdictional argument is rejected. As a result, the Motion must be denied as to the
13 statute of limitations since the Counties cannot maintain it as a procedural defense.

14 **C.  Laches**

15 The Counties argue the claims contained in the FAC are barred by the traditional doctrine of
16 laches, as well as the formulation of laches utilized by the Supreme Court in City of Sherrill v.
17 Oneida Indian Nation, 544 U.S. 197 (2005).

18 Laches is an equitable time limitation on a party's right to bring suit." Boone v. Mech.
19 Specialties Co., 609 F.2d 956, 958 (9th Cir. 1979). It works to penalize inexcusable dilatory
20 behavior by preventing a plaintiff from pursuing stale claims. See Jarrow Formulas, Inc. v. Nutrition
21 Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002). "The laches analysis consists of two questions: (1)
22 Was the plaintiff's delay in bringing suit unreasonable? and (2) Was the defendant prejudiced by the
23 delay?" Church & Dwight Co., Inc. v. Mayer Lab., Inc., No. C-10-4429 EMC, 2011 WL 1225912,
24 2011 U.S. Dist. LEXIS 35969, at *71-72 (N.D. Cal. Apr. 1, 2011) (citing Internet Specialties West,
25 Inc. v. Milon-Digiorgio Enters., 559 F.3d 985, 989-993 (9th Cir. 2009)). If both of these questions
26 are answered in the affirmative, laches may bar a plaintiff's claims. Au-Tomotive Gold, Inc. v.
27 Volkswagen of Am., Inc., 603 F.3d 1133, 1139 (9th Cir. 2010).

28 Sherrill is an illustration of laches in application. In that case, the Oneida Indian Nation

CASE NO. 5:09-cv-02502 EJD
ORDER DENYING INTERVENORS' MOTION TO DISMISS

1  ("OIN") sought to gain sovereign control and thereby exempt from taxes former aboriginal land
2  located within the present-day city of Sherrill, New York. The parcels at issue, which OIN
3  purchased from private land owners in 1997 and 1998, were not contiguous but had at one time
4  formed a portion of the traditional Oneida reservation. Armed with Supreme Court precedent
5  recognizing its possessory rights for the purpose of pursuing damages against modern state and local
6  governments, OIN sought to assume actual sovereign control over the acquired parcels, independent
7  from that of Sherrill and the state of New York. The District Court and a divided Court of Appeals
8  agreed with OIN, ultimately finding the land at issue constituted "Indian country" as that term is
9  defined by statute.

10  But the Supreme Court reversed. Sherrill, 544 U.S. at 221. Although laches had not been
11  raised in the district and appellate proceedings, the Court independently determined that OIN had
12  unreasonably delayed in raising claims to the land because, in the 200 years which had elapsed since
13  the historical Oneidas ceded the land to New York, neither OIN nor its predecessors had previously
14  sought to challenge state control. Id. at 216-17. In addition, the Court reasoned that Sherrill, the
15  state of New York, and the individuals presently residing on the land would be prejudiced if the OIN
16  claims were allowed to proceed due to "justifiable expectations" created over the period of state
17  control. Id. at 215. The land had by then undergone dramatic changes, all of which would be
18  disrupted if sovereign control was returned to OIN. Id. at 216-17. Finally, the Court found
19  prejudice in the "checkerboard of alternating state and tribal jurisdiction" that would result in a
20  parcel-by-parcel governance shift. Id. at 219-20. For these reasons, the Court held the equitable
21  doctrines of laches, acquiesence and impossibility barred OIN's claims. Id. at 221.

22  Here, it is understandable why the Counties would seek the application of laches. Much like
23  the OIN in Sherill, the time period between termination of the Rancheria and initiation of the instant
24  case is significant, and could support a determination of unreasonable delay. In addition, the
25  Counties may have developed "justifiable expectations" in their use of the acquired lands and
26  developed them in reliance, much like the city of Sherrill. But at this point, the Counties have only
27  raised the possibility that laches *may* apply, not that it actually *does* apply.

28  The reason for this conclusion comes from the context in which this argument appears.

10

CASE NO. 5:09-cv-02502 EJD
ORDER DENYING INTERVENORS' MOTION TO DISMISS

While the lines for this motion have been somewhat blurred, laches is analyzed under 12(b)(6). Since that rule generally precludes consideration of evidence outside the complaint and resolves all doubt in favor of plaintiff, it poses a nearly insurmountable obstacle to the facts-sensitive inquiry associated with laches. As aptly recognized by one of this court's contemporaries, laches is "ill-suited for a motion to dismiss for failure to state a claim." Italia Marittima, S.P.A. v. Seaside Transp. Servs., LLC, No. C 10-0803 PJH, 2010 WL 3504834, 2010 U.S. Dist. LEXIS 92771 at *16 (N.D. Cal. Sept. 7, 2010); see also Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1127 (9th Cir. 2006).

Looking to the FAC, delay may be apparent. However, a finding that such delay was unreasonable cannot be made based only on the Tribe's allegations. In fact, the Tribe has included allegations which, if proven, could ultimately preclude application of an equitable bar. Moreover, neither the allegations in the FAC nor the attachments offered by the Counties support a finding of prejudice similar to that found by the Supreme Court in Sherrill. In contrast to the sparse materials presented here, the Sherrill Court had before it a record developed through a litany of summary judgment and related motions simultaneously decided by the trial court. It was only with that type of complete record that the Court could, on its own volition, conduct the critical analysis of the facts required by laches. That cannot be done here, and prejudice cannot be assumed.[5] Thus, the motion to dismiss is denied as to laches.

### D. Political Question and Failure to Exhaust Administrative Remedies

The Counties' final arguments require minimal discussion. The Tribe's claims do not constitute a non-justiciable political question because the Tribe is not seeking federal recognition in the first instance pursuant 25 C.F.R. § 83. To the contrary, the Tribe contends it never ceased to exist due to a failure to observe termination procedures and seeks relief under the APA. That

---

[5] The court has undertaken this analysis assuming, as the Counties seem to do, that laches would bar all of the Tribe's claims if the Counties demonstrate prejudice similar to that found in Sherrill. But it is worth noting that land within municipal control was directly at issue in Sherrill, and the loss of that land by the city after a long period of exclusive possession obviously implicates concerns of prejudice. Here, the same direct link does not appear to exist between this action and a loss of land by the Counties. While the court recognizes acquisition of land is suggested in the FAC's prayer, the Tribe only requests the transfer of land already held by the Department of the Interior. It is possible then that Sherrill is distinguishable to the point of inapplicability.

1  distinct issue may be properly raised before the court.

2  The Counties have similarly confused this lawsuit with one requesting initial recognition in
3  claiming a failure to exhaust administrative remedies. As the Counties cited only procedures
4  applicable to the process for initial recognition, it is unclear what procedures they believe were not
5  exhausted. If no procedures exist, exhaustion is not an issue. This argument fails for that reason.

### III.  ORDER

Based on the foregoing, the Counties' Motion to Dismiss is DENIED.

The court schedules this action for a Case Management Conference on **January 27, 2012, at 10:00 a.m.** The parties shall file a Joint Case Management Statement on or before **January 20, 2012.**

**IT IS SO ORDERED.**

Dated: October 24, 2011



EDWARD J. DAVILA
United States District Judge

12
CASE NO. 5:09-cv-02502 EJD
ORDER DENYING INTERVENORS' MOTION TO DISMISS