**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE MISHEWAL WAPPO TRIBE OF ALEXANDER VALLEY, | CASE NO. 5:09-cv-02502 EJD |
| Plaintiff(s), | **ORDER GRANTING PLAINTIFF'S MOTION TO REVOKE INTERVENOR STATUS** |
| v. | |
| KEN SALAZAR, in his capacity as Secretary of the Interior, et. al., | [Docket Item No(s). 162] |
| Defendant(s). | |

Plaintiff Mishewal Wappo Tribe of Alexander Valley (the "Tribe") presently moves the court for an order terminating the Counties of Napa and Sonoma (the "Counties") as intervening defendants to the above-entitled case.  See ECF No. 162.  Alternatively, the Tribe seeks an order limiting the Counties' ongoing participation should they not be terminated.  Defendants Ken Salazar, Secretary of the Interior, and Larry Echo Hawk, Assistant Secretary of the Interior (the "Federal Defendant") take no position on this motion.  See ECF No. 164.  The Counties have filed written opposition.  See ECF No. 165.  The court previously determined this matter was suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and vacated the motion hearing.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331.  Having now carefully reviewed this matter, the court finds the Tribe's arguments meritorious.  Accordingly, the motion will be granted for the reasons stated below.

1

**United States District Court**
For the Northern District of California

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2009, the Tribe filed a complaint against the Secretary and Assistant Secretary of the Interior (the "Federal Defendant") seeking federal recognition as well as the protection, services and benefits which stem from such recognition.  See Compl., ECF No. 1.  The Tribe thereafter filed a First Amended Complaint ("FAC") on May 10, 2010, which also included a request directing the Federal Defendant to take into trust unidentified public lands already held by the Department of the Interior for the benefit of the Tribe.  See FAC, ECF No. 49.

On March 5th and March 24, 2010, the Counties submitted motions to intervene as defendants in this case.  See Defs.' Mots. for Intervention, ECF Nos. 38, 41.  In response, the Tribe filed a notice of non-opposition to the intervention motions on May 21, 2010, but requested that the Court limit the scope of the Counties' intervention to issues involving land acquisition.  See ECF No. 50, at 2:4-7.  On May 24, 2010, the Federal Defendant filed its own notice of non-opposition to the intervention motions, but did not include a request for limiting language.  See ECF No. 51.  The court granted the Counties' motions in a one-page order filed May 26, 2010.  See ECF No. 52.[1]

After becoming parties to this case, the Counties filed a motion to dismiss on July 16, 2010, which was subsequently amended and then re-noticed before this court on February 25, 2011, and May 16, 2011, respectively.  See ECF Nos. 58, 135, 145.  After a hearing on the motion, the Court denied the Counties' motion to dismiss on October 24, 2011.  See Order Denying Mot. to Dismiss, ECF No. 150.  This motion followed on February 21, 2012.  See ECF No. 162.

## II.   DISCUSSION

Having already been granted the ability to intervene in this action, resolution of the current motion requires the court to consider whether the Counties' status as intervenors continues to be viable.  The court has the authority to conduct this inquiry, which seemingly stems from its inherent power to control the proceedings before it.  See Tasby v. Wright, 109 F.R.D. 296, 298 (N.D. Tex. 1985) (citing Morgan v. McDonough, 726 F.2d 11, 14 (1st Cir. 1984)).  Intervention in a case does

---

[1] The operative portion of the Order is only one sentence: "For good cause shown, and in light of the statements of non-opposition, the Court GRANTS Sonoma, Napa and Lake counties' Motions to Intervene.  See ECF No. 52.

United States District Court

For the Northern District of California

1    not carry an absolute entitlement to continue as a party until the suit terminates.  See id.  The court

2    can therefore terminate intervention should the result of the inquiry weigh in favor of such an order.

3    See Morgan, 726 F.2d at 14 ("The district court needs the power to dismiss in order to manage

4    complicated drawn-out proceedings efficiently.").[2]

5         Much like intervention in the first instance, the court turns to the same factors contained in

6    Federal Rule of Civil Procedure 24 in order to determine whether intervention should continue.  See

7    id. (reasoning that an intervenor must demonstrate that it still fulfills all requirements for

8    intervention as of right in order to reverse an order terminating intervention).  This presents

9    somewhat of a challenge here since Rule 24 provides different considerations for permissive

10   intervention and intervention of right, but the order allowing for the Counties' intervention in this

11   case is silent as to the type of intervention that was allowed.  In fact, it appears this court's

12   predecessor conducted little if any analysis on the issue of intervention.  With this motion, the time

13   for that analysis has arrived.  Thus, the court must first classify the Counties' intervention before

14   turning to the ultimate question of whether the Counties's involvement in this case should be

15   terminated.

16        **A.    Permissive or As of Right?**

17        Not surprisingly, the parties disagree on the status bestowed to the Counties in the order

18   allowing for intervention.  The Tribe argues that the Counties are, and have always been, permissive

19   intervenors.  For their part, the Counties argue that the unqualified intervention order is evidence

20   they have been allowed intervention as of right.  A thorough review of this issue reveals that the

21   Tribe has the better argument.

22

23

24

25

26

27

28

---

[2]  Relying on a footnote from the order addressing their motion to dismiss, the Counties appear to argue that the court previously ruled on a challenge to their status as intervenors and that this review is precluded by the doctrine of law of the case.  See ECF No. 150 ("The court declines the Government's invitation to review the propriety of the Counties' interest in this case.  As the docket reveals, the Government and Tribe did not oppose the Counties' motion for intervention, and the Counties were granted unqualified leave to intervene by this court's predecessor with the apparent acquiescence of all involved . . . .  Thus, the Counties must be treated as if they were original named parties with the ability to raise arguments, in the same way that the Tribe and the Government may raise arguments.")  The court disagrees that anything was decided by the footnote.  To the contrary, the referenced footnote contains only an explanation of why the Court would not review the Counties' intervenor status *for that motion*.

CASE NO. 5:09-cv-02502 EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REVOKE INTERVENOR STATUS

1      "An applicant seeking to intervene as of right under Rule 24 must demonstrate that four

2    requirements are met: '(1) the intervention application is timely; (2) the applicant has a significant

3    protectable interest relating to the property or transaction that is the subject of the action; (3) the

4    disposition of the action may, as a practical matter, impair or impede the applicant's ability to

5    protect its interest; and (4) the existing parties may not adequately represent the applicant's

6    interest.'"  Citizens for Balanced Use v. Montana Wilderness Ass'n, 647 F.3d 893, 897 (9th Cir.

7    2011) (quoting Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006)).

8           Examining the four factors as applied to this case, the first and fourth factors favor the

9    Counties.  As to the first factor, the timeliness of the Counties' applications for intervention was not

10   challenged, and the court finds their application timely.  Three factors are examined to determine the

11   timeliness of an application: "(1) the stage of the proceeding, (2) the prejudice to other parties, and

12   (3) the reason for and length of the delay."  Day v. Apoliona, 505 F.3d 963, 965 (9th Cir. 2007)

13   (internal quotation marks omitted).  In this case the Counties intervened at an early stage of the

14   proceeding before any substantial actions were taken.  Indeed, at that point in the case, the Federal

15   Defendant had answered the complaint and the parties had engaged in preliminary settlement

16   discussions.  See J. Case Management Statement, ECF No. 35, 1:7-10.  For this reason, the original

17   parties were not prejudiced by the intervention because there had not been any substantial progress

18   made in the proceedings.  The Counties also provided a reasonable explanation for any delay in

19   applying for intervention in this case.

20          For the fourth factor, the burden of showing inadequacy of representation is "minimal" and

21   satisfied if the applicant can demonstrate that representation of its interests "may be" inadequate.

22   Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003).  Considering the showing required is

23   slight, the court accepts the Counties' claim that any interest they may have will not be adequately

24   represented by the Federal Defendant, particularly since the interests of the Federal Defendant and

25   the Counties appear divergent.

26          But turning to the second and third factors - which are arguable the most weighty - it

27   becomes apparent that the Counties could not have intervened as of right.  The second factor

28   requires examination of the Counties' interest in this case.  The Ninth Circuit has found that this

United States District Court
For the Northern District of California

1    factor "is generally satisfied when [(1)] 'the interest is protectable under some law, and [(2)] that

2    there is a relationship between the legally protected interest and the claims at issue." Arakaki v.

3    Cayetano, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting Sierra Club v. EPA, 995 F.2d 1478, 1484

4    (9th Cir. 1993)).  The showing on this factor must be sufficient to satisfy both elements.  Id. (citing

5    Donnelly v. Glickman, 159 F.3d 405, 410 (9th Cir. 1998)).  The second "relationship" element is

6    satisfied only if "the resolution of the plaintiff's claims actually will affect the applicant."  Id.

7            Here, the Counties articulate a "significant protectable interest" in preserving the agricultural

8    nature of county lands and preventing environmental impact as well as maintaining regulatory and

9    taxing authority, all of which they believe will be affected by the Tribe's land request.  Looking at

10   this issue closely, however, reveals that the Counties have not identified a sufficient interest based

11   on the FAC.

12           In the FAC, the Tribe seeks the following relief:

13                   (A) Directing the Secretary to restore the Plaintiff to its previous
                     position or the position Plaintiff would have enjoyed had the Secretary
14                   not purported to terminate the Tribe and distribute its assets.

15                   (B) Directing the Secretary to publish a list of recognized tribes in
                     accordance with section 104(a) of the Tribe List Act, 25 U.S.C [sic] §
16                   479a-1(a), with such list to include the Tribe's name; . . .

17                   (D) Directing the Secretary, through the Bureau of Land Management
                     and the Bureau of Indian Affairs, to identify and transfer to the Tribe,
18                   as trust lands with the land considerations as stated above, *all public
                     lands held by the Department of the Interior which are not currently in
19                   use and are available for transfer that are within the Tribe's
                     historically aboriginal land.*

20                   (E) Once the land has been transferred to the Tribe as described in the
21                   preceding paragraph, directing the Secretary to immediately take
                     action such that those lands are considered "Indian Country" as
22                   defined in 18 U.S.C. § 1151 and "restored lands" as defined by 25
                     U.S.C. § 2719(b)(1)(iii) . . . .

23

24           See ECF No. 49 (emphasis added).

25           Most significant here is paragraph (D), which was amended from its form in the original

26   complaint.  In the FAC, the Tribe now seeks only lands already held by the Department of the

27   Interior and not currently in the possession of the Counties.  This change seemingly nullifies any

28   interest the Counties may have in sovereignty, taxation, land use, or regulatory power.  See Mots. for

CASE NO. 5:09-cv-02502 EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REVOKE INTERVENOR STATUS

United States District Court
For the Northern District of California

1    Intervention, ECF Nos. 38, 41.  Accordingly, these interests are not viable, and have not been viable

2    since the FAC was filed.  Thus, they require no further discussion.

3        Similarly, the Counties' contention that the development of a Las Vegas-style casino would

4    have a significant impact on the land surrounding the development assumes too much about future

5    events not at issue in this case and is flawed in any event.  Initially, the Counties erroneously link

6    the designation of land as "restored lands" under 25 U.S.C. § 2719(b)(1)(B)(iii) with the approval to

7    build a class III gaming facility.  But while the designation of the land as "restored lands" *could*

8    allow the land to be developed into a Las Vegas-style casino at some future date, the designation

9    itself is insufficient for that type of development to occur.

10       The Counties' speculative fear of a casino development also fails to satisfy the second

11   element of the "protectable interest" inquiry, which requires some relationship between the legally

12   protected interest and the claims at issue.  According to the Ninth Circuit, a third party satisfies the

13   "relationship" test when the relief sought by the plaintiff would have a direct, immediate, or harmful

14   effect on the third party's legally protectable interest.  Forest Conservation Council v. United States

15   Forest Serv., 66 F.3d 1489, 1494 (9th Cir. 1995), overruled on other grounds by Wilderness Soc'y v.

16   United States Forest Serv., 630 F.3d 1173 (9th Cir. 2011).  Here, there is no direct, immediate or

17   harmful effect on county land by simply placing federal land into trust as the Tribe requests.  The

18   harm articulated by the Counties could only result if a casino was actually developed, an issue which

19   is not encompassed by this case.  Therefore, any environmental concerns from casino development

20   are too remote to meet the "relationship test.

21       Furthermore, the Counties' reliance on Scotts Valley Band of Pomo Indians of Sugar Bowl

22   Rancheria v. United States, 921 F.2d 924 (9th Cir. 1990), is misplaced.  There, the tribe sought to

23   take lands and place them into federal trust in a manner similar to this case.  921 F.2d at 925.  The

24   land at issue, however, was partially controlled by the city of Chico, and the city collected property

25   taxes and enforced land-use and health regulations over that portion of the land.  Id.  Based on that,

26   the Scotts Valley court easily found that the city had a substantial interest sufficient to justify

27   intervention as of right.  Id. at 927-28.  This case is obviously different.  As already detailed above,

28   the FAC clarifies that only land already under federal control - not land owned or controlled by the

6

1   Counties - is being sought by the Tribe.

2        As to the third factor, the Counties have not demonstrated that an interest would be impaired

3   or impeded absent their participation in this case.  An intervenor's interest is not impaired if there

4   exists other means to protect it.  United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th Cir.

5   2004).  Here, loss of jurisdiction, taxation, land use and regulation of land have already been

6   disposed of as possible interests, and therefore do not require protection from anything at issue in

7   this case.

8        Moreover, the Counties belief that designating lands as "restored lands" would somehow

9   impair the their interest in environmental preservation is without merit, since it again appears that

10  the Counties have improperly equated the "restored lands" designation with the development of a

11  casino.[3]  In basing their interest on the possibility of a casino, the Counties fail to account for any of

12  the federal statutes and regulations surrounding Indian gaming.  See 25 U.S.C. §§ 2701 et. seq.  The

13  requirements contained in these statutes and regulations demonstrate that this case cannot, and could

14  never, automatically result in the construction of a casino.  If the Tribe does receive land and then

15  wants to build a Las Vegas-style casino on that land, they must first enter into the process of

16  negotiations with the State to establish a Tribal-State compact governing the conduct of gaming

17  activities, which can include a provision regarding any subject directly related to the operation of a

18  gaming facility.  25 U.S.C. § 2710(d)(3).  As part of that process, the National Indian Gaming

19  Commission may consult with local law enforcement and hear any objections to the licensing of a

20  gaming establishment.  25 U.S.C. § 2710(c)(1).  To that end, the statutory process requires the

21  construction, maintenance, and operation of a gaming facility to be conducted in a way that

22  "adequately protects the environment and the public health and safety."  25 U.S.C. § 2710(b)(2)(E).

23  _____

24       [3] The Court is not persuaded by the Counties' citation of Sagebrush Rebellion, Inc. v. Watt,
     713 F.2d 525, 526 (9th Cir. 1983).  In Sagebrush, the environmental interest in preserving birds and
25   their habitat was directly tied to the designation of certain land as a wildlife preserve, and it seems
     clear this interest would be impaired if the government removed the land from the preserve.  713
26   F.2d at 528.  In contrast, the Counties are not able to make such a clear comparison.  Here, the Tribe
     is seeking federal land which is not currently in use or designated for any particular use. As such,
27   designating the land as "restored land" does not alter the land use in the same way as removing land
     from a federal wildlife preserve.  It seems the only way that the Counties' environmental interest
28   could be impaired in the manner alleged is if the land is developed into a casino, which as already
     noted is not at issue in this case.

7

Thus, designating any land as "restored land" does not affect or impair the Counties' ability to protect their environmental interest from the construction of a casino because those interests can be addressed through another process, where their objections are more appropriately directed.

In sum, the counties did not have present a "significant protectable interest" at the time of intervention, nor would any interest be impeded or impaired without their participation in this case. The court therefore concludes that the counties did not intervene as of right under Federal Rule of Civil Procedure 24(a). The Counties' intervention must be classified as permissive.

**B.      Review of Permissive Intervention**

The classification of the Counties' intervention as permissive frames the analysis for a review of the Counties' continued participation in this case. The court now looks to the elements of permissive intervention to determine whether the Counties' intervenor status should be revoked.

As relevant here, Federal Rule of Civil Procedure 24(b)(1)(B) provides that the court, in its discretion, may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." But "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Proc. 24(b)(3).

The court has already explained why the Counties' interests are either nonexistent, contingent on future events, or tangential to this proceeding. The core issues, as indicated in the FAC, are the reinstatement of federal recognition and the acquisition of *federal* land, not the taking of land under Counties' control or the construction of a casino. The Counties' identified interests are not claims that have much of anything in common with the actual issues.

In addition, the court cannot ignore the fact that the Counties' actions have significantly impacted the proceedings, such that this case has been unduly delayed. It appears the Tribe and Federal Defendant were engaged in fruitful settlement negotiations prior to the Counties' intervention. However, these negotiations turned to litigation with the addition of the Counties, such that the Counties - as peripheral players to this lawsuit - have now become its driving force. This is prejudicial to the Tribe and the Federal Defendant, especially when the Counties' intervention cannot be justified any further by their unassociated interests. Allowing the Counties to remain in

8

United States District Court
For the Northern District of California

1    this case implicates the consideration contained in subsection (b)(3) of Federal Rule of Civil

2    Procedure 24.

3           Because the Counties do not have a common claim or defense, and because allowing them to

4    remain in this case will cause further undue delay and prejudice to the named parties, the court has

5    determined that the Counties' status as permissive intervenors should be revoked.  They will

6    therefore be terminated as parties to this litigation.

7                                              **III.    ORDER**

8           Based on the foregoing, the Tribe's motion to revoke the Counties' intervenor status (Docket

9    Item No. 162) is GRANTED.  The Counties are TERMINATED as parties to this litigation.  The

10   Counties, however, may reapply to intervene in this action should the Tribe's request for relief

11   change such that intervention can be supported.

12          The court schedules this case for a Case Management Conference on **November 30, 2012.**

13   The parties shall file a Joint Case Management Conference on or before **November 21, 2012**.

14   **IT IS SO ORDERED.**

15

16   Dated: September 28, 2012



17                                                              EDWARD J. DAVILA
                                                               United States District Judge

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:09-cv-02502 EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REVOKE INTERVENOR STATUS

*United States District Court*
For the Northern District of California