UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE MISHEWAL WAPPO TRIBE OF ALEXANDER VALLEY,<br><br>Plaintiff,<br><br>v.<br><br>SALLY JEWELL, in her capacity as Secretary of the Interior, et al.,<br><br>Defendants. | Case No. 5:09-cv-02502-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 185, 186 |

In the earlier part of the twentieth century, the United States government passed a series of laws affecting its relationship with the indigenous inhabitants of California and their descendants. One of those laws, the Indian Appropriations Act of 1906, permitted the Secretary of the Interior (the "Secretary") to purchase parcels of land, or "rancherias," throughout the state for use by California Indians.[1]  Fifty years later, Congress enacted another law, the California Rancheria Act of 1958 ("CRA"), which authorized the Secretary to dissolve the same rancherias it had previously authorized.

---

[1] Since much of the relevant legal authority from this time period used the terms "Indian" or "Indians" when referring to the native people of North America, these terms will be used in a similar manner in this Order to avoid confusion. The court recognizes that these terms are no longer used by some Native American communities, and means no disrespect.

1
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

At issue in this action is the termination and distribution of one of those rancherias, the Alexander Valley Rancheria (the "Rancheria"), which, when it existed, was located in Sonoma County. Plaintiff The Mishewal Wappo Tribe of Alexander Valley ("Plaintiff") alleges in this action against Secretary of the Interior Sally Jewell and Assistant Secretary of the Interior Kevin Washburn[2] ("the "Federal Defendants") that the process utilized by the Secretary to terminate the Rancheria between 1959 and 1961 was inconsistent with the CRA and therefore unlawful. The Federal Defendants disagree.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331. Presently before the court are two Motions for Summary Judgment, one filed by Plaintiff and one filed by the Federal Defendants. See Docket Item Nos. 185, 186. The court has carefully considered these motions and the oral presentations of counsel in conjunction with the extensive historical record provided. Of the parties' arguments, one made by the Federal Defendants' provides for complete resolution. Accordingly, for the reasons explained below, the court finds that Plaintiff's claims are barred by the applicable statute of limitations. The Federal Defendants' motion will therefore be granted and Plaintiff's motion will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Creation of the Alexander Valley Rancheria

Pursuant to the Indian Appropriations Act of 1906, Pub. L. No. 59-258, 34 Stat. 325, 333, the Secretary purchased two parcels of land in 1908 and 1913 located in the Alexander Valley of Sonoma County, California. See AR, MWT-AVR-2012-000001-004, MWT-AVR-2012-000005-008, MWT-AVR-2012-000009-011. These parcels, totaling 54 acres together, were designated under the Indian Appropriations Act for the benefit of California Indians who wished to live there and eventually became known as the Alexander Valley Rancheria.

Until its distribution, legal title and ownership of the Rancheria's land was vested in the

---

[2] Although they did not hold their respective positions when this action was commenced, Secretary Jewell and Assistant Secretary Washburn are automatically substituted as defendants in place of their predecessors. See Fed. R. Civ. Proc. 25(d).

2
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States. See Decl. of David B. Glazer ("Glazer Decl."), Docket Item No. 185, at Ex. 2. Use of the Rancheria was designated through a somewhat informal "assignment" or "allotment" system, such that a right of use terminated upon abandonment of possession. Id. As a result, "Indians occasionally moved onto the property without any assignment, occupying a parcel abandoned or never assigned." Id. One observer wrote in a letter to the Commissioner of Indian Affairs on March 27, 1917, that Rancheria the "is not occupied regularly by the Indians as a home . . . ." See AR, MWT-AVR-2012-000309. Five families lived there at the time. Id.

### B. The Wappo Indians Vote to Organize

After the California rancherias had been established, Congress enacted the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 461 et seq., in 1934. Under the IRA, an Indian tribe was permitted to "organize for its common welfare" and adopt a constitution and bylaws. 25 U.S.C. § 476(a) (1934) (amended 1988). Any decision to organize as a tribe had to be "ratified by a majority vote of the adult members of the tribe or tribes at a special election authorized and called by the Secretary" and thereafter "approved by the Secretary." Id.

On May 20, 1935, the Wappo Indians living on the Alexander Valley Rancheria submitted a list of fifteen residents who they proposed could vote to organize under the IRA. See AR, MWT-AVR-2012-000053. The Sacramento Indian Agency approved fourteen of those voters on June 5, 1935. See AR, MWT-AVR-2012-000054. Although not directly explained in the record, the one unapproved voter, James Adams, was presumably excluded because he was designated as a "non-Indian." See AR, MWT-AVR-2012-000053.

On June 10, 1935, the Sacramento Indian Agency received returns from the Wappo Indians' IRA vote. See AR, MWT-AVR-2012-000359. All fourteen voters were in favor of organization. Id. By 1940, 44 of the 49 individuals living on the Rancheria were identified as members of the Wappo tribe, many of whom were children. See AR, MWT-AVR-2012-000069-072.

3
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### C. Termination of the Alexander Valley Rancheria

Congress enacted the CRA in 1958, which called for the distribution of lands and assets previously designated as rancherias or reservations after the completion of designated improvements. See Act of Aug. 18, 1958, Pub. L. No. 85-67, 72 Stat. 619. The CRA directed the Secretary to prepare a plan for distribution in consultation with interested Indians, notify all other interested Indians of the proposed distribution, and then submit the plan to a referendum of "of the adult Indians who will participate in the distribution of the property." Id. at § 2.

In May, 1959, the Secretary conditionally approved a plan for the distribution of the Alexander Valley Rancheria, and finally approved the plan without objection in September, 1959. See AR, MWT-AVR-2012-000196. The plan was then submitted to a referendum as required by the CRA. See AR, MWT-AVR-2012-000221, MWT-AVR-2012-000458, MWT-AVR-2012-000464. It was approved by unanimous vote and the Rancheria's land and assets were distributed between two families in 1961. See AR, MWT-AVR-2012-000255-256, MWT-AVR-2012-000257-258, MWT-AVR-2012-000259-261, MWT-AVR-2012-000262-264. Notice of the Rancheria's termination was then published in the Federal Register on August 1, 1961. See Property of California Rancherias and of Individual Members Thereof, Termination of Federal Supervision, 26 Fed. Reg. 6875-76 (Aug. 1, 1961); MWT-AVR-2012-000280.

### D. Litigation Challenging Rancheria Terminations

On July 12, 1979, a class action lawsuit, Tillie Hardwick, was filed in this district challenging the termination of 36 California Rancherias. See Tillie Hardwick v. United States, No. 79-1710 (N.D. Cal.). That action was eventually resolved in December, 1983, through a stipulated judgment which restored seventeen class-member tribes to their former tribal status. See Glazer Decl., at Ex. 5. Claims asserted by persons who received assets from twelve other terminated rancherias were dismissed without prejudice. Id.

In 1985, it was discovered that potential class members with claims arising from the termination of the Alexander Valley Rancheria were inadvertently omitted from the Tillie Hardwick class notice which issued prior to entry of the stipulated judgment. Id. at Ex. 8. The

court therefore ordered on September 5, 1985, that notice be given to these potential class members. Id. On December 23, 1985, the court dismissed without prejudice claims arising from the termination of the Alexander Valley Rancheria. Id. at Ex. 7.

### E.  The Instant Action

Plaintiff initiated this case on June 5, 2009, as "an American Indian Tribe consisting of Indian members and their descendants, and/or their Indian successors in interest, for whose benefit the United States acquired and created the Mishewal Wappo Tribe of Alexander Valley." See Compl., Docket Item No. 1, at ¶ 5. Plaintiff filed an Amended Complaint on May 10, 2010. See Docket Item No. 49. It asserts five causes of action: (1) breach of fiduciary duty, (2) agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act ("APA"), 5 USC §§ 701 et seq., (3) failure to conclude a matter within a reasonable time under the APA, (4) arbitrary and capricious action under the APA, and (4) violation of possessory rights. The Federal Defendants filed an Answer to the Amended Complaint on March 21, 2012. See Docket Item No. 167.

Several California cities and counties sought to intervene as parties to this case, claiming an interest in Plaintiff's request for the restoration of trust lands within their jurisdictions. See Docket Item Nos. 38 (Sonoma County), 41 (Napa County), 44 (Lake County), 68 (City of American Canyon and American Canyon Fire Protection District), 75 (City of Napa), 86 (City of St. Helena). Judge James Ware permitted the Counties of Napa and Sonoma participate as intervenors on May 24, 2010. See Docket Item No. 52. All other requests were denied. See Docket Item No. 128.

After the case was reassigned to the undersigned, the court heard a Motion to Dismiss filed by the Counties of Napa and Sonoma. See Docket Item No. 145. Plaintiff and the Federal Defendants opposed the motion. It was denied on October 24, 2011, and the Counties of Napa and Sonoma were eventually removed as intervenors on September 28, 2012. See Docket Item Nos. 150, 172. These summary judgment motions followed.

5

Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## II. LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

6

Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### III. DISCUSSION

The Federal Defendants support their motion with a series of arguments. Only one requires discussion because its application is dispositive.

#### A. The Statute of Limitations

The Federal Defendants argue that Plaintiff's claims are barred by the six-year statute of limitations described in 28 U.S.C. § 2401(a) for claims against the government. The court agrees.[3]

As a sovereign, the United States "is immune from suit unless it has expressly waived such immunity and consented to be sued."[4] Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). Any waiver of sovereign immunity must be "unequivocally expressed," and will be strictly construed in favor of the sovereign. United States v. Nordic Vill. Inc., 503 U.S. 30, 34 (1992). "A statute of limitations requiring that a suit against the Government be brought within a certain time period" is a type of temporally-defined waiver. United States v. Dalm, 494 U.S. 596, 609 (1990). Although such time limitations should not be construed "unduly restrictively," their interpretation should remain contained within the scope of the waiver intended by Congress. Id. (citing Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 287 (1983)).

Subject to exceptions not applicable here, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). This catch-all statute of limitations for claims against the Government "'applies to all civil actions whether legal, equitable or mixed.'" Nesovic v. United States, 71 F.3d 776, 778 (9th Cir. 1995) (quoting Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987)). Its reach therefore encompasses Plaintiff's claims for breach of fiduciary

---

[3] The court previously discussed the statute of limitations in connection with the Motion to Dismiss filed by then-intervenors Counties of Napa and Sonoma. See Docket Item No. 150. There, the court determined that § 2401(a) was not a jurisdictional limitation and denied the Counties' motion based on the statute because they did not have standing to raise it. Unlike the Counties, the Federal Defendants do have standing to raise § 2401(a).

[4] Agencies and agency officials are covered by sovereign immunity. Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997) ("The doctrine of sovereign immunity applies to federal agencies and federal officials acting within their official capacities.").

7
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

duty and violation of possessory rights, as well as those brought under the APA. <u>Wind River Mining Corp. v. United States</u>, 946 F.2d 710, 713 (9th Cir. 1991).

In applying the statute of limitations, the Federal Defendants contend that all of Plaintiff's claims stem from a common allegation; specifically, that the process implemented by the Secretary to terminate the Alexander Valley Rancheria was procedurally defective and thereby unlawful. Based on that, the Federal Defendants argue that Plaintiff's claims actually accrued for the purposes of § 2401(a) when notice of the Rancheria's termination was published in the Federal Register on August 1, 1961. As a result, the Federal Defendants believe that Plaintiff should have presented its challenge within six years of the publication, or no later than 1967.

A close review of Plaintiff's claims demonstrates why the Government's characterization is correct. Consistent with the Government's argument, each claim depends on the allegation that the process instituted by the Secretary to terminate the Alexander Valley Rancheria did not conform to the requirements of the CRA, such that the Rancheria was improperly terminated. Looking at the first claim, Plaintiff asserts that the Government breached its general duty as a fiduciary of Indian tribes by failing to provide proper notice of the meeting at which the Alexander Valley Rancheria distribution plan was approved, by failing to confirm that those voting for the distribution plan "were in fact members" of Plaintiff, by continuously failing to include Plaintiff on the list of federally recognized tribes, and by failing to include Plaintiff in the Department of the Interior's annual budget submission to Congress. <u>See</u> <u>Seminole Nation v. United States</u>, 316 U.S. 286, 296-97 (1942) (holding that the Government, in dealings with Indian tribes, must conduct itself "with moral obligations of the highest responsibility and trust" and will be "judges by the most exacting fiduciary standards."). As Plaintiff's own allegations demonstrate, this breach of fiduciary duty claim is dependent upon a determination that the Alexander Valley Rancheria was improperly terminated and distributed between 1959 and 1961. <u>See</u> Am. Compl., at ¶ 78 ("The purported termination of the Tribe was not lawfully effectuated in conformance with the requirements of the California Rancheria Act, thereby rendering the Tribe's purported

termination and distribution of assets void and of no legal effect."). Indeed, the distribution meeting directly challenged in this claim occurred in 1959, and the later alleged breaches - the failure to include Plaintiff in the list of recognized tribes and failure to account for it in the budget - cannot stand unless the termination was unlawful.

The same is true of the APA claims. Under 5 U.S.C. § 706, Plaintiff asserts in the second and fourth claims that its exclusion from the tribal recognition list constitutes agency action that is arbitrary, capricious, and "unlawfully withheld or unreasonably delayed." Plaintiff avers in the third claim that the same failure to include it on the list of recognized tribes violates the APA's requirement that agency proceedings conclude within a reasonable time. See 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). But again, Plaintiff's allegations demonstrate that the viability of its claims depends on the central question of whether or not the Rancheria was properly terminated. See Am. Compl., at ¶ 94 ("Upon information and belief which is likely to have evidentiary support after a reasonably opportunity for further investigation or discovery, the Secretary currently recognizes that the Tribe's purported termination was unlawful . . . ."); ¶ 99 ("[T]he Secretary has recognized since at least 1987 that the Tribe's purported termination was unlawful . . . ."); ¶ 105.

Similarly, the fifth claim relies on the improper termination of the Rancheria as a necessary predicate. There, Plaintiff asserts that the Government violated its possessory rights to use and occupy land within the historical location of the Rancheria. In order to maintain that assertion, however, Plaintiff must also allege that the Secretary "failed to comply with the California Rancheria Act, negotiated and approved an inadequate Distribution Plan, and failed to fulfill the terms of the Distribution Plan" since, absent such non-compliance, Plaintiff has no present possessory rights for the Government to violate. See Am. Compl., at ¶ 111.

Since Plaintiff's claims each rely on one common alleged injury - termination of the Rancheria - the critical inquiry becomes when that injury "first accrued" under § 2401(a). See

9

Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1578 (Fed. Cir. 1988) (holding that causes of action stemming from the same factual allegation share an accrual date for application of the statute of limitations). Generally, a claim subject to the § 2401(a) limitations period first accrues when the plaintiff comes into possession "of the critical facts that he has been hurt and who has inflicted the injury." United States v. Kubrick, 444 U.S. 111, 122 (1979); Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1396 (9th Cir. 1986) ("Under federal law a cause of action accrues when the plaintiff is aware of the wrong and can successfully bring a cause of action."). Stated another way, "[t]he moment at which a cause of action first accrues within the meaning of Section 2401(a) is when 'the person challenging the agency action can institute and maintain a suit in court.'" Muwekma Ohlone Tribe v. Salazar, 813 F. Supp. 2d 170, 190-91 (D.D.C. 2011) (quoting Spannaus, 824 F.2d at 56).

On this issue, the relevant facts are undisputed. The CRA specifically designated the Alexander Valley Rancheria within a list of those that were to be terminated and distributed according to the Act's provisions. Act of Aug. 18, 1958, Pub. L. No. 85-67, 72 Stat. 619. Pursuant to Section 2(a) of the CRA,[5] the Sacramento Area Director of the Bureau of Indian Affairs ("BIA") created a plan for the distribution of Rancheria assets "after consultation with the Indians of the Alexander Valley Rancheria." See AR, MWT-AVR-2012-000196-200. The plan primarily proposed that the Rancheria's assets be distributed between two families, the Adams family and the McCloud family, who were "recognized as the people of the rancheria who hold formal assignments and are entitled to share in the distribution of the property." Id. The Commissioner of the BIA conditionally approved the plan on or about May 21, 1959, and a general notice was posted in July, 1959, pursuant to Section 2(b) of the CRA.[6] See AR, MWT-

---

[5] "The Indians who hold formal or information assignments on each reservation or rancheria, or the Indians of such reservation or rancheria, or the Secretary of the Interior after consultation with such Indians, shall prepare a plan for distributing to individual Indians the assets of the reservation or rancheria . . ." Act of Aug. 18, 1958, Pub. L. No. 85-67, 72 Stat. 619, at § 2(a).

[6] "General notice shall be given of the contents of a plan prepared pursuant to subsection (a) of this section and approved by the Secretary, and any Indian who feels that he is unfairly treated in

10
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  AVR-2012-000215, MWT-AVR-2012-000217, MWT-AVR-2012-000491. No objections were
2  received, and the Commissioner of the BIA finally approved the plan on or about September 2,
3  1959. See AR, MWT-AVR-2012-000218, MWT-AVR-2012-000219. The plan was then
4  submitted to a referendum of the Indians who were to "participate in the distribution of the
5  property" as required by Section 2(b) of the CRA, and a majority of those voting- specifically
6  James Adams and William McCloud - approved the plan. See AR, MWT-AVR-2012-000221,
7  MWT-AVR-2012-000458, MWT-AVR-2012-000464. Grant deeds to Adams and McCloud were
8  thereafter recorded in Sonoma County on February 23, 1961, as required by Section 2(c) of the
9  CRA,[7] and copies of the deeds were sent to them on March 14, 1961. See AR, MWT-AVR-2012-
10 000255-256, MWT-AVR-2012-000257-258, MWT-AVR-2012-000259-261, MWT-AVR-2012-
11 000262-264. Adams and McCloud each signed acknowledgements of receipt for the deeds on
12 March 15, 1961. See AR, MWT-AVR-2012-000267, MWT-AVR-2012-000268. Notice of the
13 formal termination of the Alexander Valley Rancheria was then published in the Federal Register
14 on August 1, 1961. See Property of California Rancherias and of Individual Members Thereof,
15 Termination of Federal Supervision, 26 Fed. Reg. 6875-76 (Aug. 1, 1961); MWT-AVR-2012-
16 000280.

This record demonstrates that Plaintiff's claims first accrued no later than 1961 since, by then, it had come into possession of the critical facts necessary to institute a suit in court. See Kubrick, 444 U.S. at 122; Muwekma Ohlone Tribe, 813 F. Supp. 2d at 190-91 (D.D.C. 2011). As noted above, Plaintiff contends that the Rancheria's termination was contrary to the terms of the CRA and in violation of the Government's fiduciary duty because it did not properly notice the meeting concerning distribution Rancheria assets, did not verify the tribal membership of those

---

the proposed distribution of the property shall be given an opportunity to present his views and arguments for the consideration of the Secretary." Id. at § 2(b).

[7] "Any grantee under the provisions of this section shall receive an unrestricted title to the property conveyed, and the conveyance shall be recorded in the appropriate county office." Id. at § 2(c).

11
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

who voted for termination, and did not create and fulfill a qualifying distribution plan. All of these alleged violations were fully knowable by the time notice of the Rancheria's final termination was published in the Federal Register on August 1, 1961, such that Plaintiff could have initiated a lawsuit challenging the termination within the subsequent six years. This conclusion is only reinforced by the CRA's terms, which unambiguously established the Secretary's duties in creating a distribution plan and included the completion of certain infrastructure improvements before distribution.[8] In reality, any non-compliance with these particular duties prior to termination of the Rancheria would have been fairly obvious in 1961. Thus, unless Plaintiff can successfully support an argument showing otherwise or foreclosing application of the statute of limitations, the present claims are untimely under § 2401(a).

### B. Responses to the Statute of Limitations

In its pleadings, Plaintiff focuses on certain language in Section 2(a) of the CRA and suggests that the statute of limitations should not apply to its claims. Specifically, Plaintiff contends that while its members were not present on the Rancheria during the process that led its termination, the Secretary should have sought them out before the distribution plan was created and put to a vote because they qualified for notice as "Indians of" the Rancheria. Without notice to its members, Plaintiff infers that those individuals must have been unaware of the termination process and could not have known of the injury. This argument is misplaced, however, when it comes to operation of the statute of limitations. "[S]tatutes of limitations are to be applied against the claims of Indian tribes in the same manner as against any other litigant seeking legal redress or relief from the government." Hopland, 855 F.2d at 1576; Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir. 1990) ("Indian Tribes are not exempt from statutes of

---

[8] "Before making the conveyances authorized by this Act on any rancheria or reservation, the Secretary of the Interior is directed . . . [t]o complete any construction or improvement required to bring Indian Bureau roads serving the rancherias or reservations up to adequate standards for similar roads . . . . [and] to install or rehabilitate such irrigation or domestic water systems as he and the Indians affected agree, within a reasonable time, should be completed by the United States." Id. at § 3(b), (c).

12
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

limitations governing actions against the United States."). Assuming, arguendo, that Plaintiff's members qualified as "Indians of" the Rancheria under Section 2(a) of the CRA, lack of notice to them does not excuse the untimeliness of the present claims because "[a]ctual knowledge of government action . . . is not required for a statutory period to commence." Shiny Rock Mining Corp. v. United States, 906 F.2d 1362, 1364 (9th Cir. 1990). Instead, "'[p]ublication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance.'" Id. (quoting Friends of Sierra R.R., Inc. v. Interstate Commerce Comm'n, 881 F.2d 663, 667-68 (9th Cir. 1989)). Here, the notice published in the Federal Register was adequate to apprise a reasonable person of the termination and distribution of the Alexander Valley Rancheria.[9] See Friends of Sierra R.R., Inc., 881 F.2d at 668. It also lists the name of the individuals to whom the Rancheria lands were distributed and indicates that the Indian statuses of those individuals would terminate as a result. See 26 Fed. Reg. 6875. Thus, if it is true as Plaintiff alleges that James Adams was not entitled to vote on distribution or receive any portion of the Rancheria's assets as a "non-Indian", or if Plaintiff believes it should have been included in the process from the commencement as a group of "Indians of" the Rancheria, those errors were disclosed to all interested parties through the 1961 Federal Register notice.

Plaintiff also argues against application of the statute of limitations based on its theory that the Government continues to owe it a fiduciary duty. Citing Manchester Band of Pomo Indians, Inc. v. United States, Plaintiff asserts that the failure to properly terminate it as a tribe renders the Government's duty ongoing and precludes commencement of the statutory period. 363 F. Supp. 1238, 1249 (N.D. Cal. 1973) ("[W]here, as here, there is a fiduciary relationship between the

---

[9] The Federal Register notice unambiguously states, in pertinent part, that "the Indians named under the Rancherias listed below are no longer entitled to any of the services performed by the United States" and that "[t]itle to the lands on these Rancherias has passed from the United States Government under the distribution plan of each Rancheria." See 26 Fed. Reg. 6875. The Alexander Valley Rancheria is thereafter listed as the first rancheria subject to the notice. Id.

1  parties, the universal rule is that a statute of limitation does not begin to run where there is a
2  fiduciary relationship between the parties until the relationship is repudiated. (internal quotations
3  omitted)).  This argument is unpersuasive because it conflates two distinct issues: (1) one that
4  relates to Indian *lands*, which in the instant context can be described as the alleged improper
5  distribution of rancheria assets and termination of the trust relationship with individual Indians,
6  and (2) one that relates to collective Indian *status*, which can be described as the alleged improper
7  termination of a federally-recognized Indian tribe.  The two do not always overlap, and as the
8  Amended Complaint makes clear, all of Plaintiff's claims arise from the former issue rather than
9  the latter.  While Plaintiff attempts to use alleged lapses in the rancheria termination process to
10 simultaneously protest its purported termination as a tribe and seek relief related that type of
11 injury, doing so cannot be reconciled with the plain terms of the legislation addressing these
12 matters.  Indeed, the enactments which authorized the creation and then termination of
13 California's rancherias, the Indian Appropriations Act and the CRA, do not reference and have no
14 apparent connection to the one which permitted tribal organization, the IRA, outside of general
15 subject matter.  Perhaps for that reason, the CRA did not purport to terminate tribes; to the
16 contrary, only the statuses of the individual Indians who received a distribution of assets had their
17 relationships with the Government disrupted.[10]  Telling of this important distinction is the 1961
18 Federal Register Notice which nowhere indicates that tribal termination would result from the
19 distribution of the Rancheria.  Also telling is one of Plaintiff's own items of evidence, which
20 explains that while tribal acknowledgment or re-acknowledgment may depend on Plaintiff's
21 relationship to the Rancheria, this relationship is significant to the issue only insofar as any of

---

[10] "After the assets of a rancheria or reservation have been distributed pursuant to this Act, the Indians who receive any part of such assets, and the dependent members of their immediate families, shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians, all statutes of the United States for Indians because of their status as Indians shall be inapplicable to them, and the laws of the several States shall apply to them in the same manner as they apply to other citizens or persons within their jurisdiction."  Act of Aug. 18, 1958, Pub. L. No. 85-67, 72 Stat. 619, at § 10(b).

14
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's members had their individual statuses terminated by Section 10(b) of the CRA when the Rancheria was distributed.  See Decl. of Joseph L. Kitto, Docket Item No. 186, at Ex. 7.[11]

Thus, termination of the Alexander Valley Rancheria did not equate to the termination of Plaintiff's status as a federally-recognized tribe.[12]  Consequently, any continuing fiduciary duty owed to Plaintiff by the Government on the distinct issue of termination of its tribal status is external to whether the statute of limitations accrued on the instant claims challenging the Rancheria's termination, or the effect of it, under the CRA.  Manchester Band[13] has questionable

---

[11] On March 18, 1996, the Tribal Government Services division of the BIA wrote in response to information submitted by John M. Trippo that "[t]he process your group uses to seek acknowledgement may depend on your group's relationship to the Alexander Valley Rancheria," but expressed the significance of this relationship in terms of terminated individuals that may be included in Plaintiff's membership.  The writer explained that individual termination could be determinative of tribal recognition because the "regulations governing acknowledgement, in section 83.7(g), require that, in order to be acknowledged, 'Neither the petitioner not its members are the subject of congressional legislation that has expressly terminated or forbidden the Federal relationship.'"  This explanation is consistent with the CRA, and emphasizes the fact that it only operated to terminate individual status, not tribal status.

[12] When contemplating this distinction, it is important to keep in mind that the various California rancherias were not created for the use of particular Indian tribes, and their establishment was not tethered to the federal recognition of any tribe.  Instead, rancheria lands were purchased "for the use of the Indians in California now residing on reservations which do not contain land suitable for cultivation, and for Indians who are not now upon reservations in said state," without any tribal designation.  Act of June 21, 1906, Pub. L. No. 59-258, 34 Stat. 325, 333; AR, MWT-AVR-2012-00196-200 ("The Alexander Valley Rancheria . . . was purchased for landless California Indians.").  Accordingly, while the IRA permitted the Indians of the Alexander Valley Rancheria to organize themselves into a tribe in 1935 due to a common interest in the previously-established rancheria, this fact did not then render the existence of the tribe dependent on that of the rancheria.  See 25 U.S.C. § 476 (1934) (amended 1988) (authorizing either adult members of a tribe or "adult Indians residing on such reservation" to vote for tribal organization); 25 U.S.C. § 479 (defining "tribe" to include "the Indians residing on one reservation").

Furthermore, the apparent importance of the Alexander Valley Rancheria to any tribal entity created as a result of the 1935 IRA vote only emphasizes the logical conclusion stated previously that the members of the tribe would have been aware of any errors in the rancheria termination process sometime before the limitations period ran in 1967.  That those individuals may not have been aware of the significance of the Rancheria's termination is of no moment.  Kubrick, 444 U.S. at 122 ("Ignorance of the legal effect of an injury is not a basis to toll the statute of limitations.").

[13] The district court found in Manchester Band that the plaintiff's claims against the Government were not untimely under the same statute of limitations at issue here - 28 U.S.C. § 2401(a) - based on what it termed the "universal rule" that a statute of limitations does not begin to run between fiduciaries until the fiduciary relationship is terminated.  The court cited Kasey v. Molybdenum Corp. of America, 336 F.2d 560 (9th Cir. 1964), in support of that statement.  That citation,

15
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

persuasive value here, and the additional cases cited by Plaintiff on this topic do not compel an alternate conclusion because each is factually distinguishable.[14]

Additionally, while not addressed by Plaintiff, the court has considered whether Plaintiff's claims have yet to accrue under the holding of Wind River Mining Corp. v. United States, 946 F.2d 710, 713 (9th Cir. 1991), or by application of the continuing violations doctrine. In Wind River, the Ninth Circuit held that "a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger." 946 F.2d at 716. Wind River does not apply here because Plaintiff's challenge is procedural, not one asserting ultra vires agency action. Likewise, any argument based

---

however, does not directly support the description of the rule as "universal," considering the Kasey court was addressing only a statute of limitations provided by California law, not federal law, and expressly stated as much in the portion of the opinion cited in Manchester Band. 336 F.2d at 569 ("Apparently both courts had in mind the *California rule* that a statute of limitations does not begin to run where there is a fiduciary relationship between the parties until the relationship is repudiated." (emphasis added)).

[14] In Table Bluff Band of Indians v. Andrus, 532 F. Supp. 255 (N.D. Cal. 1981), the Table Bluff Band of Indians was the federally recognized governing body of the Table Bluff Rancheria. When the rancheria was terminated, the Band's federal tribal recognition was also necessarily terminated because the members who received distributions lost their respective statuses as individual Indians according to Sections 10(b) and 11 of the CRA, the latter of which revoked the previously-adopted rancheria constitutions and corporate charters upon adoption of a distribution plan. Thus, when the Government conceded that it failed to meet all of its obligations under Section 3(c) of the CRA, the court could find on summary judgment that neither the Rancheria and nor the Band's tribal status was properly terminated since both issues rose and fell together. In this case, unlike Table Bluff, the Alexander Valley Rancheria had no recognized tribal governing body and none was terminated along with the Rancheria. See AR, MWT-AVR-2012-00196-200 (stating, in reference to the Alexander Valley Rancheria, that it "do[es] not have a constitution or charter and no Government buildings are involved.").

Similarly, the Government conceded in the consolidated action of Smith v. United States, 515 F. Supp. 56 (N.D. Cal. 1978), that the process utilized to terminate the Hopland Rancheria was inconsistent with its obligations under Section 3 of the CRA. There, however, the court was not faced with issues of tribal recognition since the lawsuit involved only "Indian people of the Rancheria." Those individual Indians could properly challenge the rancheria's termination since the CRA directly affected their rights. Here, in contrast, Plaintiff does not purport to represent the Indians whose individual statuses were terminated when the Alexander Valley Rancheria was distributed. To the contrary, Plaintiff's theory is based on its *exclusion* from participation in the process. That being the case, the statuses of Plaintiff's members would not have been terminated by Section 10(b) of the CRA since participation in the rancheria's distribution was required in order for individual status termination to occur.

16
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

on the continuing violations doctrine would fail because it "is not applicable in the context of an APA claim for judicial review." Gros Ventre Tribe v. United States, 344 F. Supp. 2d 1221, 1229 n.3 (D. Mont. 2004), aff'd at 469 F.3d 801 (9th Cir. 2006). It has been previously rejected under these exact circumstances, and the court will reject its application here. See Wilton Miwok Rancheria v. Salazar, Nos. C-07-02681-JF-PVT, C-07-05706-JF, 2010 U.S. Dist. LEXIS 23317, at *16-17 n.5, 2010 WL 693420 (N.D. Cal. Feb 23, 2010) (citing Felter v. Kempthorne, 473 F.3d 1255, 1260 (D.C. Cir. 2007)).

Finally, the court turns to Plaintiff's argument that the statute of limitations should be equitably tolled. "[T]he equitable tolling doctrine 'enables courts to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices.'" Wong v. Beebe, 732 F.3d 1030, 1052 (9th Cir. 2013) (quoting Holland v. Florida, 560 U.S. 631, 650 (2010)). Generally, the proponent of equitable tolling must establish two elements: (1) that the proponent has been pursuing rights diligently, and (2) that some extraordinary circumstances stood in the way. Id.

For the first element, Plaintiff begins with reference to Tillie Hardwick, and points out that the Government made a series of representations subsequent to its dismissal from that case which led it to believe it would be restored short of litigation. But the Tillie Hardwick action was initiated in 1979. Thus, what is missing from Plaintiff's diligence presentation is any explanation or evidence describing the acts Plaintiffs took to pursue its rights in the eighteen year period between 1961 - when the Rancheria was terminated - and 1979. Although this element does not require an "overzealous or extreme pursuit of any and every avenue of relief," it nonetheless does require "the effort that a reasonable person might be expected to deliver under his or her particular circumstances." Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011). Here, it is unreasonable for Plaintiff to have sat idly for nearly two decades when all of the facts needed to raise its claims were available to it long beforehand.

As to the second element, qualifying "extraordinary circumstances" have been found in

"situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." O'Donnell v. Vencor Inc., 465 F.3d 1063, 1068 (9th Cir. 2006). Plaintiff does not specifically identify the "extraordinary circumstances" that prevented it from bringing timely claims, and there is certainly no evidence of previously-filed defective pleadings or trickery on the part of the Government. To the extent Plaintiff relies on sporadic governmental overtures of recognition by other means for this element, the court has already explained why those statements came too late to justify an equitable intervention and do not, in any event, amount to misconduct. Contrary to Plaintiff's position, there are no triable issues on whether Plaintiff is entitled to equitable tolling because, on this record, Plaintiff has not met its burden to produce evidence satisfying the doctrine's the elements.

In the end, Plaintiff's arguments fail to counter the effect of the statute of limitations. As a result, the court sees no reason to depart from the conclusion that each is barred by § 2401(a).

### C. CONCLUSION

Statutes of limitation are based on a theory "that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Order of R.R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 349 (1944). It is that theory which makes enforcement of the statute of limitations appropriate here. As the preceding discussion demonstrates, the Federal Defendants have met their burden to show an absence of triable material fact as to when Plaintiff's claims first accrued. The uncontroverted evidence confirms they accrued no later than 1961, and Plaintiff has not demonstrated otherwise despite its burden to do so.

A timely action challenging the distribution and termination of the Alexander Valley Rancheria under the CRA should have been filed between 1961 and 1967. Since this action was not commenced until forty years later, the court finds that all of the claims asserted by Plaintiff in

18

Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

this action are untimely under 28 U.S.C. § 2401(a). On that basis, the Federal Defendants' Motion for Summary Judgment will be granted and Plaintiff's cross-motion will be denied.

**IV.  ORDER**

For the foregoing reasons, the Federal Defendants' Motion for Summary Judgment (Docket Item No. 185) is GRANTED. Plaintiff's Motion for Summary Judgment (Docket Item No. 186) is DENIED. Since this result represents a complete resolution of this case, judgment will be entered in favor of the Federal Defendants and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated:  March 23, 2015

EDWARD J. DAVILA
United States District Judge

19
Case No.: 5:09-cv-02502-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT